# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 18-cv-1972 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| SERGIO ZACAHUA ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Petitioner's Section 2255 petition [1] is denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of the United States. Civil case terminated.

**I.     Background**

On September 25, 2013, Sergio Zacahua was charged in Case No. 13-cr-576-3 with conspiracy to possess with intent to distribute and distribute heroin, in violation of 21 U.S.C. § 846 (Count 1); distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts 3, 5, and 8); and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts 6, 12, and 13). On March 22, 2016, Zacahua entered a plea of guilty to Count 1 without a written plea agreement or plea declaration.

According to the Pre-Sentence Investigation Report [328, at 10-11], Zacahua's total offense level, based on the 2015 Guidelines Manual, was 29 and he had a criminal history category of I, resulting in an advisory guideline imprisonment range of 87 months to 108 months, though, since the statutorily required minimum sentence of 10 years is greater than the maximum of the applicable guideline range, the guideline term of imprisonment was 120 months.[1] Zacahua's base

---

[1] The PSR contains a mathematical error that is evident on pages 10-11, as the total offense level in paragraph 24 is listed as 34, there are no adjustments in paragraphs 25 through 28, yet the adjusted offense level in paragraph 29 is listed as 32. This error was corrected at the sentencing, but it was academic in any event because the mandatory minimum applied and the sentence imposed was exactly that.

offense level was determined to be 34 pursuant to USSG §§2D1.1(a)(5) and (c)(3), as a result of the attribution of more than 10 kilograms, but less than 30 kilograms of heroin. Because Zacahua did not participate in an interview with investigating agents and did not provide the government all information and evidence he had regarding the offense, he was deemed to be ineligible for the "safety valve" reduction pursuant to USSG §2D1.1(b)(17). However, because he did promptly plead guilty, he was awarded three levels for acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b). *Id*. at 11.

At his sentencing on November 21, 2016, the Court asked Zacahua if he would prefer to continue the sentencing so that he could attempt a second safety valve proffer. Zacahua declined. The Court determined that Zacahua's total offense level was 31—the total offense level of 34 less the three points for acceptance and timely plea—which yielded an advisory Guidelines range of 108-135 months, which was increased at the low end to 120 months given the mandatory minimum. The Court imposed the mandatory minimum term of ten years, followed by a five-year term of supervised release.

Zacahua's appellate counsel initially filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967), and seeking leave to withdraw on the ground that he could not discern any non-frivolous basis for appeal. *United States v. Zacahua*, 2017 WL 3720602, at *4 (7th Cir. 2017). However, the court of appeals denied counsel's motion. The appeal then proceeded to full briefing and oral argument on the issue of whether Zacahua's guilty plea should be vacated because this Court failed to inform him of the potential immigration consequences of his plea, as Federal Rule of Criminal Procedure 11(b)(1)(O) requires. The Seventh Circuit rejected this contention, finding that although the Court failed to advise Zacahua of the immigration consequences of his plea, he was not entitled to relief since he failed to demonstrate a reasonable probability that, had he been

provided this warning, he would not have pleaded guilty. *United States v. Zacahua*, 940 F.3d 342, 343 (7th Cir. 2019).

In his petition seeking relief under 28 U.S.C. § 2255, Zacahua argues that his appellate attorney performed ineffectively in filing an *Anders* brief and in failing to argue that Zacahua should have been eligible for the "safety valve" provided for in USSG § §2D1.1(b)(17). He also argues that his attorney did not advise him of his speedy trial rights and failed to provide him with copies of the complaint and discovery materials. The Government filed a response brief. The Court gave Zacahua until February 15, 2021 to file a reply brief, but no such brief has been received as of the date of this opinion.

## II.     Analysis

### A.     Legal Standard

The Seventh Circuit has stressed that "relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal. See *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (stating that a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal" (internal citation and quotation marks omitted)).

To prevail on a § 2255 claim, Petitioner must meet the familiar two-pronged "performance" and "prejudice" test set forth in *Strickland v. Washington*, establishing that (1) his lawyer's

performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceedings would have been different, but for his counsel's "unprofessional errors." 466 U.S. 688, 694 (1984); see also *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). Unless both components of the test are satisfied, the claim must be denied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996). Regarding the performance prong, a court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight" such that "[i]t is no surprise that such claims almost always fail." *United States v. Taglia,* 922 F.2d 413, 417-18 (7th Cir. 1991); see also *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Regarding the prejudice prong, if a court finds an attorney's representation to be unconstitutionally deficient, it must then decide whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (citing *Strickland*, 466 U.S. at 690). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant

to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). Petitioner must satisfy both prongs of the test in order to meet his burden, and a finding against him on either prong may end the inquiry. *Id*. at 697. Review of a trial attorney's performance is "highly deferential," and a district court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000). Petitioner must show that his counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

To prevail on a claim of ineffective appellate counsel, Zacahua must establish that his appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues that counsel did raise on appeal. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citing *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994). Appellate counsel are not required to raise every conceivable issue, or even all the issues of colorable merit that a defendant insists be raised. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Deficient performance is shown only if the neglected issues are "clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 288, (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Prejudice exists if "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010).

### B. Zacahua's Arguments

#### 1. *Anders* brief and "safety valve"

Zacahua first argues that his appellate attorney performed ineffectively in filing an *Anders* brief and in failing to argue that Zacahua was improperly denied the "safety valve" at sentencing. The filing of the *Anders* brief itself cannot have caused prejudice to Zacahua because the Seventh Circuit rejected that brief. While it is true that the issue on which the court of appeals took full briefing is not the issue raised by Zacahua's petition, the "safety valve" issue on which Zacahua now pins his hopes for relief clearly lacks merit.

The safety-valve provision requires a district court to waive the imposition of a statutory minimum sentence if it finds that the defendant meets the following five criteria:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines ...;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

*United States v. Collins,* 924 F.3d 436 (7th Cir. 2019), citing U.S.S.G. § 5C1.2(a); 18 U.S.C. § 3553(f). Zacahua does not explain how he met these criteria or specifically what his attorney should have argued in appealing the district court's decision not to allow him a "safety valve"

6

reduction. If fact, there was no argument to make due to Zacahua's own choices prior to and at the sentencing. Recognizing that the mandatory minimum had the consequence of bumping up the low end of the advisory Guideline range by a full year, this Court advised Zacahua at the outset of the sentencing hearing that it would allow a continuance if Zacahua wished to make another attempt to satisfy the safety valve. Zacahua declined. Given that sequence of events, there was no record from which appellate counsel could have advanced the argument that Zacahua was entitled to the safety valve—and making such an argument would have been frivolous.

### 2. Speedy trial argument

Zacahua also argues that his attorney was ineffective for failing to advise him that he had a right to a speedy trial within 70 days of indictment. This contention lacks merit for several reasons. First, a transcript of the plea colloquy [372 at 9-10, 12] confirms that Zacahua expressly waived his right to a speedy trial when he entered his guilty plea:

> THE COURT: And do you understand, sir, that if you plead not guilty, you have a right to a speedy trial; you have a right to see and hear all of the witnesses called to testify against you; you would have the right to use the subpoena power of the Court to make sure any witnesses you would want at trial would be present, and your counsel would have a right to cross-examine any witnesses called against you? Do you understand all of those rights, sir?
>
> THE DEFENDANT: Yes.
>
> * * *
>
> THE COURT: And do you understand that if you plead guilty, you waive all of the trial rights we have just been discussing?
>
> THE DEFENDANT: Yes.

Moreover, Zacahua does not argue that he suffered any prejudice as a result of being unaware of this issue, that the exclusions of time that were entered between the time of his indictment and his guilty plea were inadequate or prejudicial, that his Speedy Trial Act rights were violated, or that

7

the outcome of his case would have been any different had his attorney explained his Speedy Trial rights to him. He therefore has failed to meet *Strickland's* prejudice prong in any event.

### 3. Complaint and discovery materials.

Zacahua also seeks relief on the ground that his attorney did not provide him with a copy of the criminal complaint and with discovery materials. This contention also fails. To begin, Zacahua does not cite any facts in the record or any case law in support of his argument. In fact, the record shows on several occasions that Defendant was advised of the charges against him and at his change of plea he acknowledged that a copy of the indictment has been translated for him and that he had discussed the charges with his attorney. He also listened at the change of plea to a translation of the factual basis underlying the Government's case on the count of conviction. Finally, Defendant fails to explain how the provision of any of the items he claims not to have been provided would have affected the outcome of his case and thus the *Strickland* prong as well.

### C. Evidentiary hearing

As the foregoing analysis shows, Plaintiff is not entitled to relief. Moreover, his allegations are so deficient that the Court can deny his petition without an evidentiary hearing. A district court must grant an evidentiary hearing in a Section 2255 case if the petitioner "alleges facts that, if proven, would entitle him to relief." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015). As a threshold requirement, a petitioner must submit a detailed and specific sworn affidavit providing facts supporting the petitioner's assertion that he is entitled to relief. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). The absence of this affidavit "precludes the necessity of a hearing." *Id.* (citing *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002)). Courts also may "deny an evidentiary hearing where the motion, files, and records of the case conclusively

show that the prisoner is entitled to no relief." *Torzala*, 545 F.3d at 525. Here, Zacahua did not submit a sworn affidavit, and the balance of the record confirms the absence of any right to relief.

### D. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ on the merits of his claims. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## III. Conclusion

For the reasons stated above, Petitioner's motion is denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of the United States. Civil case terminated.

Dated: May 3, 2021

Robert M. Dow, Jr.
United States District Judge